IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

———————————————————

LISA PROPER,

                Plaintiff,

                      Civil Action No.
    v.                6:10-CV-01221 (GTS/DEP)

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                Defendant.

———————————————————

APPEARANCES:                OF COUNSEL:

FOR PLAINTIFF:

PORTNOY & ASSOCIATES, PC      IRWIN M. PORTNOY, ESQ.
542 Union Avenue
New Windsor, NY 12550

OLINSKY LAW GROUP          KAREN S. SOUTHWICK, ESQ.
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

FOR DEFENDANT:

HON. RICHARD S. HARTUNIAN    JASON P. PECK, ESQ.
United States Attorney for the     Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff Lisa Proper, who suffers from several diagnosed medical conditions including a lower back disorder, residual cervical pain following neck surgery, bone spurs in her heels, and obesity, has commenced this proceeding pursuant to section 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), seeking judicial review of an agency determination denying her application for disability insurance benefits. Plaintiff maintains that the challenged determination, which is based upon a finding by an administrative law judge ("ALJ") that despite her limitations she is capable of performing the functions of her past relevant work as a printed circuit board solderer as well as other available light and sedentary work, lacks the support of substantial evidence, having resulted from the improper rejection of both opinions of her treating physicians and testimony regarding her limitations, as well as a failure to take into account the cumulative, limiting effects of her several medical conditions. As relief, plaintiff asks that the court remand the matter to the Commissioner, with a directed finding of disability, for the limited purpose of calculating benefits.

2

Having carefully reviewed the record now before the court in light of plaintiff's arguments, and after applying the requisite deferential standard of review, I find that the Commissioner's determination resulted from the application of proper legal principles, and is supported by substantial evidence.

I.      BACKGROUND

Plaintiff was born in September of 1967; at the time of the administrative hearing in this matter, held on October 8, 2008, plaintiff was forty-one years old.  Administrative Transcript at p. 123.[1]  Plaintiff is married, has no children, and lives together with her husband in a mobile home in Mayfield, New York.  *Id.* at 26-27.  Plaintiff has a twelfth grade education, but has not had any further educational or vocational training.  *Id.* at 28.

Prior to 2002, plaintiff worked for twelve years as a printed circuit board solderer assembler, a job which required some lifting and carrying.  AT 30-31, 168.  In that position plaintiff sat for most of the time, although the job also required her to occasionally walk.  AT 31, 157-58, 168.

---

[1]      Portions of the administrative transcript which was filed by the Commissioner in this action, Dkt. No. 9, and is comprised principally of the medical records and other evidence before the agency when its decision was made, will hereinafter be cited as "AT____."

Plaintiff left that job when the plant in which she was working closed.  AT 31.

Plaintiff was next employed on a full time basis beginning in February 2002 at St. Regis Sportswear, where she worked sewing hats. AT 29, 157, 168, 188.  Plaintiff has described that position as also involving mostly sitting, although she was additionally required to move boxes of hats utilizing a hand cart.  AT 29-30, 159.  Plaintiff was laid off from that position on February 4, 2005.  AT 30, 168.

More recently, plaintiff worked in a part-time job for nine days in 2007, ironing wedding gowns and dresses for a bridal shop.  AT 28-29, 188.  Plaintiff left that position after nine days because she "wasn't picking it up and it bothered her legs to stand."  AT 29.

Over time, plaintiff has sought and received treatment for various medical conditions from several sources.  Since 1996, plaintiff has treated with Dr. Robert Brandis for a heel spur in her left foot, neck and lower back pain, and other generalized complaints.  AT 308-10, 319-483, 515-20, 526-32.  The last reported visit by plaintiff with Dr. Brandis occurred on July 31, 2008, following magnetic resonance imaging ("MRI") testing of her lower back.  AT 527.  On that occasion plaintiff exhibited mild tenderness

4

in her lower back, and stated that her pain level was two out of a maximum of ten.  AT 527.  Dr. Brandis explained to the plaintiff that her MRI scan "showed no significant evidence of neuro or central spine stenosis nor significant disc bulging", although it did reveal "some desiccation of some of the discs at L4-L5, L2-L3." *Id.*  Plaintiff was diagnosed with lumbar muscle sprain, obesity, and a history of neck surgery, and was prescribed Flexeril and Lortab, as needed, and limited in her activity to lifting not more than twenty-five pounds "if possible".  *Id.*

On June 20, 2005, Dr. Paul Spurgas, a neurosurgeon, performed a cervical discectcomy with fusion upon the plaintiff to address herniated discs at C5-C6 and C6-C7, a condition which had reportedly caused plaintiff pain in her arms bilaterally.  AT 212-21, 294-96, 412-13, 502-06. While plaintiff experienced some soreness, difficulties in swallowing, and hoarseness following the surgery, she appeared to show improvement. AT 292-93.  Plaintiff was prescribed Flexeril for her post-operative pain. *Id.* at 290-93.

Plaintiff underwent physical therapy at Nathan Littaur Hospital later in 2005.  AT 240-44, 246-51.  On October 5, 2005, plaintiff's cervical spine revealed minimal decrease for side bending and rotation, and her flexion

and extension were found to be within functional and normal limits.  AT
248.  By November 8, 2005, it was reported that plaintiff had a normal
range of motion, and normal strength in her upper extremities.  AT 244.

On November 9, 2005, plaintiff advised Dr. Spurgas that she was
doing well and desired to return to work.  AT 290.  Noting that a complete
fusion would be required before she was able to resume any type of
strenuous activity, Dr. Spurgas wrote that "at this point, I think she
responded to physical therapy, the wound has healed well, there is the
matter just to increase her flexibility and decrease her pain, and she
should be well on her way to relief of her preoperative symptoms."  AT
290.  Following another regimen of physical therapy at the Nathan Littauer
Hospital in January and February of 2006, AT 252-61, Dr. Spurgas
released the plaintiff for work on May 4, 2006 with a lifting restriction of
twenty-five pounds.  AT 303, repeated at 305.

Plaintiff was consultatively examined by Dr. Amelita Balagtas on
October 5, 2006.  AT 484-86.  Based upon her examination Dr. Balagtas
diagnosed the plaintiff as suffering from neck pain status post-disc
surgery, lower back pain, and degenerative disk disease, with an
"undetermined" prognosis.  *Id.*  Dr. Balagtas added that based upon her

6

evaluation "the claimant would have slight to moderate limitations in activities that require bending, lifting, prolonged sitting, prolonged standing, and any overhead activities."  AT 486.

Plaintiff's medical records were examined by Dr. J. Bodnar, a state agency medical consultant, in December of 2006.  AT 487-94.   Based upon that review, Dr. Bodnar opined that plaintiff has the physical capacity to lift up to twenty pounds occasionally and ten pounds frequently; can stand and/or walk (with normal breaks), and can sit (also with normal breaks), for approximately six hours out of an eight hour work day; and is not otherwise limited in her ability to push and/or pull.  AT 490.  Dr. Bodnar additionally noted that plaintiff experiences some modest postural limitations, and indicated that her opinions were not inconsistent with those of any treating or examining source.  AT 490-93.

II.   PROCEDURAL HISTORY

A.   Proceedings Before the Agency

Plaintiff filed an application for disability insurance benefits with the Social Security Administration on July 18, 2006, alleging a disability onset date of June 20, 2005.   AT 123-25.  In connection with that application, plaintiff identified "[d]eteriorating discs in back, neck pain,

[and] bone spurs in neck" as conditions limiting her ability to work.  AT 167.  Following an initial denial of that application, AT 56, at plaintiff's request a hearing was conducted before ALJ Terence Farrell on October 8, 2008 to address plaintiff's application for benefits.  AT 22-55.  On October 24, 2008, ALJ Farrell issued a written decision finding that plaintiff was not disabled at the relevant times, and therefore denying her application for disability benefits.  AT 10-21.

In his decision, ALJ Farrell applied the now-familiar, five-step test for determining disability, concluding at step one that the plaintiff had not engaged in substantial gainful activity since her alleged onset date.  AT 15.  The ALJ next found that plaintiff suffers from multiple severe impairments, including "lower back disorder, history of neck surgery, history of heel problems, and obesity," but concluded that they do not meet or medically equal any of the listed, presumptively disabling conditions set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *Id.*

ALJ Farrell next surveyed the available evidence, concluding that plaintiff retains the residual functional capacity ("RFC") to perform light work, with the exception that standing should be limited to approximately thirty minutes at a time; walking should be limited to short distances;

8

sitting, which could extend to six hours in an eight hour work day, should

be limited to approximately thirty minutes at a time; and she can only

"occasionally balance, climb, crawl, crouch, stoop, kneel, and perform

overhead reaching."  AT 16.  In arriving at that the RFC finding ALJ Farrell

rejected plaintiff's claims of disabling pain as not fully supported by the

record.  AT 18-19.  Applying his RFC determination, with the benefit of

testimony from a vocational expert, the ALJ concluded that plaintiff is

capable of performing her past relevant work as a solderer assembler, as

well as in additional available positions at both the light work and

sedentary work exertional levels.[2]  AT 19.  ALJ Farrell therefore concluded

---

[2]      By regulation light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time
with frequent lifting or carrying of objects weighing up to 10
pounds.  Even though the weight lifted may be very little, a
job is in this category when it requires a good deal of
walking or standing, or when it involves sitting most of the
time with some pushing and pulling of arm or leg controls.
To be considered capable of performing a full or wide range
of light work, you must have the ability to do substantially all
of these activities.  If someone can do light work, we
determine that he or she can also do sedentary work,
unless there are additional limiting factors such as loss of
fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  Sedentary work is defined by regulation as follows:

Sedentary work involves lifting no more than 10 pounds at
a time and occasionally lifting or carrying articles like docket
files, ledgers, and small tools.  Although a sedentary job is
defined as one which involves sitting, a certain amount of

that plaintiff was not disabled at any relevant time.  AT 21.

The ALJ's opinion became a final determination of the agency on August 19, 2010, when the Social Security Administration Appeals Council denied plaintiff's request for review of that decision.  AT 1-3.

B.    This Action

Plaintiff commenced this action on October 13, 2010.  Dkt. No. 1.  Issue was thereafter joined on March 22, 2011 with the filing of an answer on behalf of the Commissioner, accompanied by an administrative transcript of the evidence and proceedings before the agency.  Dkt. Nos. 8, 9.  With the filing of the plaintiff's brief on May 4, 2011, Dkt. No. 11, and that on behalf of the Commissioner on July 27, 2011, Dkt. No. 15, the matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rules 72.3(d).  *See*

---

walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  In addition, a subsequent ruling has clarified that sedentary work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period.  *See* Social Security Ruling 83-10.

*also* Fᴇᴅ. R. Cɪᴠ. P. 72(b).[3]

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986).  If, however, the

---

[3]     This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

correct legal standards have been applied and the ALJ's findings are

supported by substantial evidence, those findings are conclusive, and the

decision should withstand judicial scrutiny regardless of whether the

reviewing court might have reached a contrary result if acting as the trier

of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d

Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998)

(Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184

(2d Cir. 2003).  To be substantial, there must be "'more than a mere

scintilla'" of evidence scattered throughout the administrative record.

*Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427 (quoting *Consolidated

Edison Co.*, 308 U.S. at 229, 59 S. Ct. 219); *Martone,* 70 F. Supp. 2d at

148 (quoting *Richardson*).  "To determine on appeal whether an ALJ's

findings are supported by substantial evidence, a reviewing court

considers the whole record, examining the evidence from both sides,

12

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *See Parker*, 626 F.2d at 235;

13

*see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644 (2d Cir. 1983).

     B.    <u>Disability Determination - The Five-step Evaluation Process</u>

     The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* at § 423(d)(2)(A).

     The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* at §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* at §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* at §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* at §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.   <u>The Evidence in This Case</u>

        1.   <u>Cumulative Affects of Plaintiff's Limiting Conditions</u>

In her first argument plaintiff contends that in assessing her ability to perform work-related functions, ALJ Farrell failed to consider the cumulative effects of her pain, including post-surgery cervical pain, lumbar spine pain, and pain in her left foot, her inability to flex forward and turn her head, and her obesity.  This argument is focused principally upon her obesity and the limitations allegedly associated with that condition.

Plaintiff's medical records confirm a history of at least moderate obesity, but reveal no documented concerns voiced by medical professionals regarding plaintiff's weight and the need to aggressively

16

address that condition other than through a suggested diet and occasional encouragement to lose weight.  *See, e.g.,* AT 319, 328-29, 335, 339-40, 342, 344, 349, 351, 360, 362, 365, 371, 527.  The mere presence of a disease or impairment alone, of course, is insufficient to establish disability; instead, it is the impact of the disease, and in particular any limitations which it may impose upon the ability to perform basic work functions, that is pivotal to the disability inquiry.  *See Rivera v. Harris,* 623 F.2d 212, 215-16 (2d Cir. 1980); *Coleman v. Shalala,* 895 F. Supp. 50, 53 (S.D.N.Y. 1995).

Significantly, plaintiff has not identified, either in any of the medical records or in her hearing testimony, evidence of specific limitations on her ability to perform work-related functions resulting directly from her obesity; her brief to this court is similarly deficient, in that it fails to identify any such limitations.  While plaintiff suffers from obesity, with a body mass index approaching 40, and the record reflects comments from her treating physicians recommending that she lose weight, reports of examinations by treating sources and by Dr. Balagtas fail to reveal significant restrictions on her mobility, including her ability to ambulate and to get on and off an examining table without assistance, attributable to her obesity.  In short,

plaintiff's obesity does not appear to have contributed to any limitations on her ability to perform work-related functions, and thus was not improvidently overlooked by the ALJ making his disability analysis.

Plaintiff also points to alleged restrictions in her range of motion as further undermining the ALJ's RFC findings.  While it is true that Dr. Balagtas found limitations in plaintiff's range of motion in the cervical spine, including in connection with flexion and rotation, she also found that plaintiff exhibits a full range of motion in her shoulders, elbows, forearms, wrists, and fingers.  AT 485.  Moreover, while plaintiff did demonstrate limitations in forward flexion and lateral flexion, her rotary movements were full, and she retained a full range of motion in hips, knees, and ankles.  AT 485-86.  Based upon these findings, Dr. Balagtas opined that plaintiff "would have slight to moderate limitations in activities that require bending, lifting, prolonged sitting, prolonged standing, and any overhead activities."  AT 486.  These findings are fully consistent with the ALJ's RFC determination that plaintiff is capable of performing light work, with sitting and standing limited to thirty minutes at a time, and with only occasional crouching, stooping, kneeling, and overhead reaching.  *See* AT 16.

The ALJ's determination that the cumulative effects of plaintiff's

impairments do not impair her ability to perform work at the light and sedentary levels, with exceptions noted, is therefore supported by substantial evidence.

       2.   <u>Treating Physician</u>

On May 3, 2006, Dr. Paul Spurgas, the neurosurgeon who performed plaintiff's cervical surgery, prepared the following report, noting Ms. Proper's complaints of persistent difficulties:

> At this point, she really has not responded to conservative modes of management with any significant relief. I do not think she will be able to return to her work. We had a discussion whether there is really something she is going to be able to do. I doubt that is going to be the case.
>
> We have exhausted pretty much conservative modes of management without any relief in her situation. Studies reveal everything to be in good position. There is no evidence of any problem, so I really do not have anything further to offer her.
>
> She questions whether she should apply for disability. I think she probably should. I believe she would be unable to perform her normal activities. Since this is going on for such a period of time, I doubt if she is ever going to be able to return to any type of functional status. I do not really understand completely why she has had these symptoms for such a long period of time, but indeed they have persisted. The only option I suggest at this point would be some type of pain management therapy.

AT 288.   The ALJ rejected this as a treating source report concerning symptomology, pointing out that Dr. Spurgas' progress notes failed to include specific findings of physical examinations, and adding that on the day after authoring the above-cited report Dr. Spurgas released the claimant for work, with only a lifting restriction of twenty-five pounds.  AT 303, 305.

Ordinarily, the opinion of a treating physician regarding the nature and severity of an impairment is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588; *Barnett v. Apfel*, 13 F.Supp.2d 312, 316 (N.D.N.Y. 1998) (Hurd, M.J.).[4]  Such opinions are not controlling, however, if they are contrary to other substantial evidence in

---

[4]      The regulation which governs treating physicians provides:

Generally, we give more weight to opinions from your treating sources . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

the record, including the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

If the ALJ does not give controlling weight to a treating source's opinion, he or she must apply several factors to determine what degree of weight should be assigned to the opinion, including 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the degree to which the medical source has supported his or her opinion; 4) the degree of consistency between the opinion and the record as a whole; 5) whether the opinion is given by a specialist; and 6) other evidence which may be brought to the attention of the ALJ.  *See* 20 C.F.R. §§ 404.1527, 416.927.   When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The failure to apply the appropriate legal standards for considering a treating physician's opinions constitutes a proper basis for reversal of an aging determination, as is the ALJ's failure to provide reasons for rejection

of his or her opinions.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *Barnett*, 13 F.Supp.2d at 316-17.

It should be noted that in arriving at his RFC finding, ALJ Farrell did not reject any specific conclusions of Dr. Spurgas regarding plaintiff's capacity for work-related functions.  Instead, he rejected an opinion which implies Dr. Spurgas' belief that plaintiff should qualify for disability.  Such a finding, however, involves a matter reserved for the Commissioner, and an ALJ is not obliged to give deference to that type of conclusory opinion, as distinct from specific RFC findings of a treating physician.  *See Moore v. Astrue*, No. 08–CV–1736, 2011 WL 5416337, at *6 (E.D.N.Y. Nov. 8, 2011) (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative."); *Thompson v. Comm'r Social Sec.*, No. 7:10–CV–1085, 2011 WL 5080239, at *7-8 (N.D.N.Y. Aug. 18, 2011) (Baxter, M.J.), *report and recommendation adopted*, 2011 WL 5080213 (N.D.N.Y. Oct. 26, 2011) (Sharpe, J.); *Monica v. Astrue*, No. 7:06-CV-1414, 2010 WL 3724118, at *9 (N.D.N.Y. 2010) (Kahn, J.).

Moreover, Dr. Spurgas' opinions concerning disability are not well supported by either his clinical findings or those of plaintiff's longstanding

treating physician, Dr. Brandis.  In his last dated report from July 31, 2008, Dr. Brandis echos the opinion of Dr. Spurgas to the extent that plaintiff should not lift more than twenty-five pounds, without indicating any additional limitations.  AT 527.  Indeed, Dr. Brandis appears to concur in Dr. Spurgas' belief that plaintiff is capable of performing work-related functions, on more than one occasion recommending that she consider receiving vocational training.[5]  *See* AT 520, 531.  In sum, the ALJ did not improperly reject opinions of legal significance from Dr. Spurgas, plaintiff's treating surgeon.[6]

Plaintiff also challenges the ALJ's failure to credit the July 2006 opinions of her physical therapist, to the effect that she should "avoid sitting".  *See* AT 254-55.  It is noted, however, that the therapist also discerned improvement following November 2005, AT 254, observing that plaintiff hurt herself operating a snow blower and vacuuming, and adding that plaintiff tolerated the therapy well and had only intermittent pain.  AT

---

[5]       Despite this recommendation, plaintiff stated she has not undergone any vocational training.  AT 28.

[6]       In support of her argument plaintiff is critical of the ALJ's failure to recontact Dr. Spurgas.  *See* Plaintiff's Memorandum (Dkt. No. 11) p. 18.  The record reveals that Dr. Spurgas was in fact contacted by the agency in July of 2006 with a request that he complete a medical report regarding the plaintiff.  AT 297-301, 303.  Unfortunately, however, Dr. Spurgas did not respond to that request.  *Id.*

254-61.

In order to be given controlling weight pursuant to the treating physician rule, a treating source's opinion must be a "medical opinion". 20 C.F.R. § 404.1527; *Diaz*, 59 F.3d at 313; *Toro*, 937 F. Supp. at 1091-92. Under the regulations, however, a physical therapist is not an "acceptable medical source" qualified to render a medical opinion. *Cascio v. Astrue*, No. 10–CV–5666, 2012 WL 123275, at * 3 (E.D.N.Y. Jan. 17, 2012). Since physical therapists cannot provide medical opinions, their opinions are not subject to the treating physician rule, and consequently there is no "hard and fast rule" governing the weight which an ALJ must give a physical therapist's opinion. *See Mortise v. Astrue*, 713 F. Supp. 2d 111, 126 (N.D.N.Y. 2010). Rather, "'the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him [or her]; under no circumstances can the regulations be read to require the ALJ to give controlling weight to [the other source's] opinion.'"[7] *Cascio*, 2012 WL 123275, at * 3 (quoting *Diaz*, 59 F.3d at

---

[7]     This is not to say that such evidence is meaningless and can be rejected outright. *See Rivera v. Bowen*, 665 F. Supp. 201, 206 (S.D.N.Y. 1987). Indeed, the regulations provide that a physical therapist's opinion should be considered for the purpose of assisting the ALJ in understanding how a claimant's impairment affects his or her ability to work. *Chandler v. Callahan*, No. 96-CV-1790, 1998 WL 99384, at *5 (N.D.N.Y. Feb. 23, 1998) (Pooler, J. and DiBianco, M.J.) (citing 20 C.F.R. §§

313–14).

In this instance, the physical's therapist report to which plaintiff points is an isolated entry dated January 17, 2006, stating that plaintiff should "avoid sitting".  AT 255.  This is not inconsistent with a limitation on sitting for any length of time as supported by the consultative examination of Dr. Balagtas, who states that plaintiff has some slight to moderate limitations in prolonged sitting.  AT 486.  Plaintiff also testified during the hearing that she cannot sit for long periods of time without experiencing back pain and difficulty in getting up.  AT 38-39.  Plaintiff did indicate, however, that she is able to sit for between one-half hour and two hours at a time, depending upon the circumstances.  AT 39.  This is fully consistent with the ALJ's RFC finding in which he concluded that while plaintiff could sit for six hours in an eight hour work day she is limited to doing so for approximately thirty minutes at a time.  AT 16.

In sum, the ALJ did not improperly reject as controlling any treating source entitled to special deference and inconsistent with his RFC findings.

3.    Whether Plaintiff's Condition Meets or Medically Equals Listing

---

404.1513(e)(3), 416.913(e)(3)).

Section 1.04

In support of her challenge to the Commissioner's determination, plaintiff next argues that plaintiff's spinal condition, while concededly not meeting the requirements of Listing 1.04, medically equals that listing. The burden of proving that an impairment satisfies the criteria of a listed, presumptively disabling condition rests with the plaintiff. *See Bowen v. Yuckert*, 482 U.S. 137, 148 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Corbett v. Comm'r of Social Sec.*, No. 7:08-CV-1248, 2009 WL 521694, at *9-10 (N.D.N.Y. Dec. 30, 2009) (McAvoy, S.J. and Peebles, M.J.).  In this instance, Listing 1.04, which relates to spinal disorders resulting in nerve root compromise, requires a showing of

> A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR
>
> B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

OR

C.     Lumbar spinal stenosis resulting in
pseudoclaudication, established by findings on
appropriate medically acceptable imaging,
manifested by chronic nonradicular pain and
weakness, and resulting in inability to ambulate
effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, Appl. 1 § 1.04; *see Loggins v. Astrue*, No.

10–CV–6060, 2011 WL 2555364, at * 7 (W.D.N.Y. Jun. 27, 2011).  Here,

the ALJ correctly concluded that plaintiff's spinal condition does not meet

the requirements of Listing 1.04, since the medical evidence in the record

fails to disclose evidence of nerve root compression with motor, sensory

or reflex loss, spinal arachnoiditis, or spinal stenosis.

Again focusing on her overweight condition, plaintiff contends that

her weight issues "arguably" support a finding that her impairments

together medically equal the condition described in Listing 1.04.  It is true

that by regulation a claimant may show medical equivalence to a listed

condition despite not fully satisfying all of the specific requirements

associated with it if the claimant "[has] other findings related to [his or her]

impairment that are at least of equal medical significance to the required

criteria. . .."  20 C.F.R. § 404.1526(b)(1).  When considering whether a

claimant's impairment meets or equals one or more of the conditions listed

in the regulations, that person's obesity and its effects in combination with

musculoskeletal impairments must be considered, in the context of the

specifics of the claimant's circumstances.[8]  *See* 20 C.F.R. Pt. 404, Subpt.

P, App.1, § 1.00(Q); *see also* SSR 02-1p; *Orr v. Barnhart,* 375 F. Supp. 2d

193, 199 (W.D.N.Y. 2005).  As the regulations observe,

> [o]besity is a medically determinable impairment
> that is often associated with disturbance of the
> musculoskeletal system, and disturbance of this
> system can be a major cause of disability in
> individuals with obesity.  The combined effects of
> obesity with musculoskeletal impairments can be
> greater than the effects of each of the impairments
> considered separately.  Therefore, when
> determining whether an individual with obesity has
> a listing-level impairment or combination of
> impairments, and when assessing a claim at other
> steps of the sequential evaluation process,
> including when assessing an individual's residual
> functional capacity, adjudicators must consider any
> additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(Q).

Undeniably, when considering disability, an ALJ is dutibound to

consider the combined effects of a claimant's impairments, even if one or

more of those conditions alone would not qualify as impairments

---

[8]     Obesity in and of itself was eliminated as a listed disability in October of 1999.  *See* Social Security Ruling 00-3p.  Its description as a potential contributing factor is now referenced in section 1.00(Q) of the listings.

significantly limiting the claimant's ability to perform basic work activities. *Delk v. Astrue*, No. 07-CV-167-JTC, 2009 WL 656319, at * 5 (W.D.N.Y. Mar. 11, 2009).  The plaintiff, who bears the burden of proof, however, has failed to show how her symptomology equals in medical significance the missing criteria of Listing 1.04.  This is particularly true with regard to her obesity.  The record is conspicuously silent on the question of what, if any, effects plaintiff's obesity has on her ability to perform work functions, and how it provides a basis to conclude that the combined total effects of her medical condition equal the criteria of Listing 1.04.  I therefore recommend rejection of plaintiff's contention that her condition medically equals that described in Listing 1.04.

    4.    <u>Plaintiff's Credibility</u>

Plaintiff next challenges the ALJ's finding that her testimony regarding her pain limitations was not fully credible.

An ALJ must take into account subjective complaints of pain in making the five-step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*).

29

Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain. *See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record. *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[9]  *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated

---

[9]  In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human*

*Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

It appears to be well-documented that the plaintiff does suffer from some degree of occasional discomfort as a result of her neck and back conditions.  The fact that she suffers from discomfort, however, does not automatically qualify her as disabled, since "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).  Moreover, the evidence regarding the extent of plaintiff's pain is at best equivocal.  There are several references in the record to visits to Dr. Brandis during which plaintiff stated that she was not in any pain, and that her back aches only "from time to time."  *See, e.g.,* AT 519, 520, 530, 531.  Plaintiff's pain does not require injections or the use of TENS unit, and is managed only through use of Flexeril and, when needed, Lortab, as well as Excedrin.  AT 32-38.

On December 27, 2006, Dr. Bodnar, who examined plaintiff's medical records, opined that despite her claims of pain she is capable of sitting at least six hours in an eight hour work day.  The assessment of a consulting physician is entitled to some weight, and in this instance was properly relied upon by the ALJ.  *Thompson*, 2011 WL 5080239, at *10 and n.5.  Dr. Bodnar's opinions provide substantial evidence that despite

her occasional pain the plaintiff is capable of performing work-related functions.

The ALJ's RFC finding and rejection of plaintiff's claims of debilitating pain are also supported by her reported daily activities, which stand in marked contrast to the suggestion that the pain precludes her from performing even sedentary work.  Plaintiff indicates that despite her medical condition she retains the ability to perform occasional light housework, including vacuuming, paying bills, and cooking, as well as to iron and wash laundry when able.  AT 147-49, 254-61.  Plaintiff shops weekly, attends to her own personal needs and those of her pets, and drives.  *Id.*  Significantly, while plaintiff was laid off in February 2005 from her hat sewing position, she indicates that had she not been laid off she would have worked until her neck surgery in June 2005.[10]  AT 30, 159.

In sum, plaintiff's complaints of disabling pain are inconsistent with objective evidence in the record and were therefore properly rejected by the ALJ.

### 5.   The ALJ's RFC Analysis

In her next point, plaintiff challenges the ALJ's RFC determination,

---

[10]      At the hearing plaintiff testified that the hat sewing job entailed mostly sitting.  AT 29-30.

and in particular his finding of her ability to sit, contending that the ALJ failed to provide a function-by-function analysis of plaintiff's impairments and their impact upon her ability to sit.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404.1545(b), 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp. 2d at 150

34

(citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).  The plaintiff bears the burden to show that her RFC is more limited than that found by the ALJ.  *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009); *Allen v. Comm'r of Social Sec.*, No. 7:08-CV-650, 2010 WL 5175027, at *3 (N.D.N.Y. Dec. 14, 2010) (Hurd, J.); *Kirton v. Astrue*, No. 06-CV-4080, 2009 WL 2252092, at *6-7 (S.D.N.Y. Jul. 28, 2009) ("Under *Poupore*, there is only a 'limited burden shift' at step five; the Commissioner 'need only show that there is work in the national economy that the claimant can do ... he need not provide additional evidence' of claimant's RFC.") (quoting *Poupore*).

Plaintiff's RFC argument is centered upon alleged restrictions on her ability to sit.  The record, however, contains only modest indication of any limitation on her ability to sit, provided that she is afforded the opportunity to periodically to change positions.  Plaintiff's last significant employment involved prolonged sitting.  AT 29-30.  Neither of plaintiff's treating

physicians, Dr. Spurgas and Dr. Brandis, reported any restriction on sitting, noting only a limitation on lifting. *See, e.g.,* AT 303, 527. Dr. Balagtas, a consulting examiner, assessed only a "slight to moderate" limitation in "prolonged sitting", AT 486, and Dr. Bodnar, a consulting professional who reviewed plaintiff's medical records, concluded that plaintiff can sit for six hours in an eight hour workday. AT 487. These findings were considered by the ALJ, and support his RFC finding.

      6.    <u>Reliance Upon Testimony of a Vocational Expert</u>

     In support of her challenge to the Commissioner's determination, plaintiff lastly argues that the ALJ's reliance upon vocational expert testimony was misplaced.

     It is well-established that elicitation of testimony from a vocational expert is a proper means of fulfilling the agency's burden at step five of the disability test to establish the existence of jobs in sufficient numbers in the national and regional economy that plaintiff is capable of performing. *Bapp v. Bowen*, 802 F.2d 601, 604-05 (2d Cir. 1986); *Dumas*, 712 F.2d at 1553-54; *Dwyer v. Apfel*, 23 F. Supp. 2d 223, 229-30 (N.D.N.Y. 1998) (Hurd, M.J.) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)); *see also* 20 C.F.R. §§ 404.1566, 416.966. Use of hypothetical questions to

develop the vocational expert's testimony is also permitted, provided that the questioning precisely and comprehensively includes each physical and mental limitation of the claimant accepted as true by the ALJ. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability. *Id.*

Plaintiff argues that the hypothetical posed to the vocational expert failed to take into consideration certain of her limitations, including chiefly her ability to sit for prolonged periods. As the Second Circuit has noted, however, "[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." *Halloran*, 362 F.3d 33. Addressing sitting, the ALJ's hypothetical limited sitting to thirty minutes at a time. AT 48.

Plaintiff additionally challenges the ALJ's failure to include in his hypothetical limitations on her abilities to turn her head and to bend forward. In posing a hypothetical to a vocational expert, an ALJ is only

37

required to include those limitations which could reasonably be expected to further interfere with or diminish the exertional and non-exertional limitations which could reasonably be expected to restrict the claimant's ability to perform work-related functions. *Dumas*, 712 F.2d at 1553-54. The burden of establishing that those limitations do come into play with regard to work functions rests with the plaintiff. *Allen*, 2010 WL 5175027, at *3. The claimed limitation in the plaintiff's ability to turn her head or bend forward are not supported by substantial evidence in the record. Moreover, in this instance there is no indication that the claimed limitations on turning her head or bending forward would significantly interfere with her ability to perform the exertional requirements included in the RFC finding, and specifically to perform her past relevant work as well as other available light and sedentary work.

With the RFC set forth in the hypothetical, the vocational expert testified that the plaintiff could perform her past relevant work as a solderer, and thus the ALJ was not required to proceed to step five, where the burden shifts to the Commissioner. In short, the plaintiff has failed to carry her burden at step four of proving her inability to perform work-related functions consistent with the RFC hypothetical posed to the

38

vocational expert, as well as her past relevant work.  Moreover, even

assuming the need for the ALJ to complete step five of the disability

protocol, at which point the burden of proof shifted to the Commissioner,

his finding of available work that plaintiff is able to perform is supported by

substantial evidence.

IV.   SUMMARY AND RECOMMENDATION

The finding of no disability in this action was based upon an RFC

finding which draws considerable support from the record, including the

opinions of plaintiff's own treating sources, who noted only a restriction on

her ability to lift, as well as the consulting opinions of examining physician

Dr. Balagtas and non-examining physician Dr. Bodnar.  In arriving at his

determination, the ALJ properly relied on the testimony of a vocational

expert, using a hypothetical incorporating that RFC finding, and properly

rejecting plaintiff's claims of debilitating pain as not being fully credible.

Based upon the foregoing it is therefore hereby

RECOMMENDED that plaintiff's motion for judgment on the

pleadings be DENIED, defendants' motion for judgment on the pleadings

be GRANTED, the Commissioner's determination be CONFIRMED, and

plaintiff's complaint be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      February 28, 2012
            Syracuse, NY

40